SUPPRESSED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

OCT – 1 2025

**U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) No. | |
| | ) | |
| | ) | |
| SHARON DOLISI, | ) | **4:25CR513 JMD/JSD** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INDICTMENT

### COUNT 1

(Conspiracy to Commit Mail Fraud and Wire Fraud)

The Grand Jury charges:

**A.      Introduction**

1.     Defendant is a 79-year old retiree who resides at 14480 Dillon Outer Road, St. James, Missouri and has never traveled to the Country of Jamaica ("Jamaica").

2.     E.L., L.N., C.A.Y., D.T., C.L.F.K., S.M., M.K., and R.H., whose ages ranged between 66 and 94 years old, received telephone calls and text messages advising that they had won lotteries and sweepstakes.

3.     E.L., L.N., C.A.Y., D.T., C.L.F.K., S.M., M.K., and R.H. resided in North Carolina, Louisiana, Texas, California, and Pennsylvania.

4.     The callers instructed E.L., L.N., C.A.Y., D.T., C.L.F.K., S.M., M.K., and R.H. to mail or wire money to individuals located throughout the United States as payment of taxes and fees associated with their prizes.

5.    The individuals receiving the money from the "winners" play the role of "*money mules.*" A "mule" is a person who receives the fraudulently obtained money and merchandise on behalf of the scammer, and forwards the proceeds to the scammer. A mule can be a witting participant, or a victim used to funnel proceeds to another mule.

6.    Between on or about April 21, 2023, and on or about June 11, 2025, Defendant deposited into her personal bank accounts cashier's checks and personal checks received from E.L., L.N., C.A.Y., D.T., C.L.F.K., S.M., M.K., R.H., and 20 additional individuals totaling more than $2,000,000.

7.    On or about April 26, 2023, representatives of Great Southern Bank mailed a letter to Defendant at 14480 Dillon Outer Road, Saint James, Missouri notifying her that the bank was closing her account after a review of its history.

8.    On or about October 28, 2024, Defendant informed law enforcement officials that she was not receiving money from or sending money to other people.

9.    On or about November 1, 2024, in response to an inquiry by representatives of the Bank of Missouri regarding three large cash withdrawals between October 29, 2024, and October 31, 2024, that totaled $64,500, Defendant claimed the cash was needed because she buys and sells gold.

10.  On or about June 27, 2025, Defendant stated she needed to withdraw $54,000 in cash to purchase gold and collectibles when a representative of St. John Bank in Cave Springs, Missouri questioned her immediate need for a cash withdrawal instead of obtaining a cashier's check in that amount.

**B.    Conspiracy**

11. Beginning on or about December 1, 2022, and continuing to on or about June 11, 2025, in the Eastern District of Missouri and elsewhere, the defendant,

**SHARON DOLISI,**

and persons, known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other and persons, known and unknown to the Grand Jury, to commit the following offenses against the United States:

a. to use the mails, and private and commercial interstate carriers, in executing, and attempting to execute, a scheme and artifice to defraud in violation of Title 18, United States Code, Section 1341 and

b. to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, any sounds and signals for the purpose of knowingly executing and attempting to execute, a scheme and artifice in violation of Title 18, United States Code, Section 1343.

**C.    Ways, Manner, and Means of the Conspiracy**

12. It was a part of the conspiracy that Defendant and persons, unknown to the Grand Jury, would by deceit, craft, trickery, and dishonest means, defraud profit from third parties by inducing them to believe that they needed to mail and wire money to Defendant to satisfy the taxes and fees incurred as a result of their purported winning of a lottery and sweepstakes.

13. It was further a part of the conspiracy that Defendant would open personal bank and credit union accounts in the Eastern District of Missouri and request the issuance of debit cards.

3

14.  It was further a part of the conspiracy that Defendant would cause the delivery of the debit cards to persons in Jamaica.

15.  It was further a part of the conspiracy that persons unknown to the Grand Jury would telephone and text residents of the United States and advise them that they had won the Publisher's Clearing House Sweepstakes, the Mega Millions lottery, and other real and fictitious sweepstakes.

16.  It was further a part of the conspiracy that persons unknown to the Grand Jury would send through the United States Postal Service and private and commercial interstate carriers packets containing unsigned, counterfeit checks made payable to the purported winners with instructions that representatives of the sweepstakes and lottery would be dispatched to their homes to sign the checks and release the winnings upon the prepayment of taxes and fees to "intermediates" and "merchant bankers."

17.  It was further a part of the conspiracy that a person unknown to the Grand Jury identified Defendant as a "merchant banker" to a purported lottery and sweepstakes winner.

18.  It was further a part of the conspiracy that, during the telephone calls, persons unknown to the Grand Jury would instruct the winners to send through the United States Postal Service and private and commercial interstate carriers sums of money to satisfy the fictitious taxes and fees.

19.  It was further part of the conspiracy that if the purported winners lacked sufficient liquid assets to pay the required funds, persons unknown to the Grand Jury would instruct them to obtain reverse mortgages and home equity loans.

20.  It was further part of the conspiracy that if the purported winners ceased communicating with them, persons unknown to the Grand Jury would initiate welfare checks with

local law enforcement and send service workers to the winners' homes in an attempt to reinitiate contact.

21.  It was further part of the conspiracy that Defendant would permit persons unknown to the Grand Jury to withdraw the proceeds of the fraudulent scheme by conducting automated teller machine transactions through Jamaica.

22.  It was further part of the conspiracy that Defendant would access the proceeds deposited into her accounts by making large cash withdrawals.

23.  It was further part of the conspiracy that Defendant concealed her involvement in the fraudulent scheme from bank representatives by claiming to be involved in the buying and selling of gold.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 THROUGH 5
(Mail Fraud)

The allegations set forth above are re-alleged and incorporated by reference as if fully set out herein.

**B.    The Scheme to Defraud**

24.    Beginning on or about December 1, 2022, and continuing through on or about June 11, 2025, in the Eastern District of Missouri and elsewhere, the defendant,

**SHARON DOLISI,**

and persons unknown to the Grand Jury, devised, and intended to devise, a scheme and artifice to defraud individuals who believed they had won a lottery and sweepstakes into sending through the United States Postal Service and a private, interstate carrier cashier's checks and personal checks

5

to Sharon Dolisi, 14480 Dillon Outer Road, St. James, Missouri, as prepayment of taxes and fees assessed as a result of their fictitious winnings.

25. It was part of the scheme and artifice to defraud that:

   a. Through telephone calls and text messages, persons unknown to the Grand Jury convinced E.L., L.N., C.A.Y., D.T., C.L.F.K., S.M., M.K., and R.H. that they had won a lottery and sweepstakes but needed to prepay taxes and fees upon their winnings in order for the funds to be released;

   b. E.L., L.N., C.A.Y., D.T., C.L.F.K., S.M., M.K., and R.H. sent cashier's checks and personal checks made payable to Defendant through the United States Postal Service and private and commercial interstate carriers;

   c. Defendant received the cashier's checks and personal checks and endorsed them before depositing the checks into her personal bank and credit union accounts; and

   d. Defendant made some of the proceeds available to persons unknown to the Grand Jury by providing them with the debit cards issued upon her personal bank and credit union accounts but obtained the majority of the fraudulently obtained funds by making cash withdrawals from her accounts.

## C.   The Mailing

26. On or about the dates listed below, in the Eastern District of Missouri, the defendant,

**SHARON DOLISI,**

for the purpose of executing the above-described scheme to defraud, did knowingly take and receive from an authorized depository payments for fictitious taxes and fees that had been sent through the United States Postal Service and private and commercial interstate carriers from the

6

individuals listed below to **SHARON DOLISI,** 14480 Dillon Outer Road, St. James, Missouri:

| COUNT | DATE | SENDER | DELIVERY METHOD | SENDING STATE | AMOUNT |
|-------|------|--------|-----------------|---------------|--------|
| 2 | 2/25/2025 | S.M. | United Parcel Service | Pennsylvania | $150,000 |
| 3 | 3/19/2025 | M.K. | United States Postal Service | Texas | $150,000 |
| 4 | 3/25/2025 | R.H. | United States Postal Service | North Carolina | $11,000 |
| 5 | 4/3/2025 | R.H. | United States Postal Service | North Carolina | $12,500 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1349 as set forth in Count 1, and Title 18, United States Code, Section 1343 as set forth in Counts 2 through 5, the defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to the violation set forth in Counts 1 through 5.

3. Subject to forfeiture is a sum of money equal to the total value of any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of the violations set forth in Counts 1 through 5.

7

4.  If any of the property described above, as a result of any act or omission

of the defendant(s):

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

THOMAS C. ALBUS
United States Attorney

_____

TRACY LYNN BERRY - 014753 TN
Assistant United States Attorney

8